HARRIS, Judge.
Donald Matteson was employed by the City of Titusville in 1973 and was discharged for reasons unspecified in the record effective September 30, 1988. Matteson received wages in lieu of two weeks’ notice as well as accumulated vacation and sick pay and although these wages were paid in various amounts during the last quarter of 1988 and the first quarter of 1989,[1] it is undisputed that he performed no services after September 30, 1988. It appears that these payments were deferred as a result of Matteson’s delayed request because of his efforts to regain his position with the city.
Matteson did not seek .unemployment benefits until November, 1989 — over a year following his termination.
The Unemployment Appeals Commission determined that even though Matteson’s total wages, including wages in lieu of notice and for vacation and sick pay,[2] should be included in calculating his total base period wages, the figure should be divided by only the number of weeks during the base period in which Matteson actually performed services.[3] Using this method of calculation, Matteson did not meet the qualification requirements of section 443.-091(l)(e):
He has been paid wages for insured work equal to 20 times his average weekly wages during his base period ...
[emphasis added].
Matteson, therefore, was denied coverage.
On appeal, Matteson contends that since he received “wages” in both the last quarter of 1988 and the first quarter of 1989, even if not for services rendered during this period, he should be credited with the number of weeks that his total wages represented payment, to wit: 22. If his total wages were divided by this number, rather than the number of weeks for which he was actually employed, then he would meet the above stated requirement.
“Insured work” means “employment for employers.”[4] “Employment” means “any services performed by an employee for the person employing him.”[5] These definitions support the Commission’s position that insured work contemplates only that period of time during the base period in which Matteson was actually performing services for the city.
Matteson relies on the definition of unemployment:
“An individual shall be deemed “totally unemployed” in any week during which he performs no services and with respect to which no earned income is payable to *828 him ...”[6] [Emphasis added.]
He argues that since he received wages subsequent to September, 1988, he was not then unemployed so he must have been employed.
This definition is subject to two interpretations. First, as contended by Matteson, the definition can be construed to mean that employment continues so long as the employee performs services or receives wages for previous services regardless of how long the employee defers asking for such wages. Second, it can be construed to mean that employment continues only so long as the employee performs services or is on vacation or sick leave during employment. Employment would terminate upon discharge because only during employment is earned income payable during vacation and recognized sick leave and only then because of the employment agreement; after discharge, while the former employee may be entitled to unpaid, earned vacation or sick leave because of such previous employment, such pay is not income earned or payable for any week after termination. We believe the legislature intended the second definition.
We find that the construction of the statute by the agency charged with its administration is not unreasonable and therefore should be affirmed.
We have considered the additional points raised by Matteson and find them to be without merit.
AFFIRMED.
GRIFFIN and DIAMANTIS, JJ., concur.

. The exact dates of these payments are not a matter of record in this appeal.

. This total was $17,468.69. Because of the late date of his filing, Matteson’s base period was the last two quarters of 1988 and the first two quarters of 1989.

. This was 13 weeks.

. § 443.036(25) Fla.Stat. (1989).

. § 443.036(19) Fla.Stat. (1989).

. § 443.036(32) Fla.Stat. (1989).